Good morning. My name is James Nelson. I represent James Bennett in this matter before the court. I would request reserve four minutes for rebuttal. This matter comes before the court following a conviction, following a jury trial for a violation of 21 U.S.C. 841B1C, which was a lesser-included offense. Mr. Bennett was initially charged with a violation of 21 U.S.C. 841B1A and provided notice of enhancement under 21 U.S.C. 851, which created a mandatory minimum of 15 years for Mr. Bennett. Following indictment, discovery was received and reviewed with Mr. Bennett. Mr. Bennett determined who he believed the government's cooperators or persons that were alleging that he was involved in a conspiracy. The witnesses would be, he was adamant that he was not involved in the conspiracy as alleged in the indictment. Through the review of discovery and discussions, he determined that he wanted to go to trial in this matter. Prior to trial, the government offered a plea agreement wherein Mr. Bennett would plead to a violation of 21 U.S.C. 841B1A. The government would agree to dismiss the 851 notice and the government would agree to cap their sentencing recommendation at 196 months. This would create a mandatory minimum of 10 years for Mr. Bennett and he denied that he was involved in the conspiracy that would require a 10-year mandatory minimum sentence. He rejected the plea agreement and he proceeded to trial. He denied that he was involved with Mr. Crook and Mrs. Erdman and those were the two main cooperating witnesses at trial. Counsel, going through and reciting to us much of what we can read from the brief, but as you went down that list, you mentioned his desire to go to trial and his pursuit of that. Why didn't that, why wasn't that a proper basis for denial of acceptance of responsibility? Well, the issue that he had with respect to denial of acceptance was he was put in a position where he either had to admit to a greater offense that he denied involvement in or remain silent and go to trial. So he elected to remain silent and go to trial. He was sort of put into a trick bag where he either had to agree that he was involved with Krista Erdman, which he adamantly denied, and Mr. Crook, which he adamantly denied, to receive acceptance or essentially perjure himself by entering into a plea that he couldn't make a factual basis for or go to trial and deny that he was involved with those two people. And what ultimately happened was he was convicted of the lesser included offense, which wasn't, in our opinion, wasn't even the offense that was charged in the indictment. So with respect to the acceptance of responsibility, he effectively went to trial on a charge that he denied having been involved in, was convicted of a separate conspiracy, and was denied acceptance of responsibility because he didn't agree to plead guilty for a charge that he wasn't convicted of. During the course of the testimony, there was reams and reams of testimony about weights, quantities. Mr. Erdman tried to put all sorts of weight on it. I guess I'm waiting to hear how this takes your case out of the sphere of cases where we say if you put the government to its proof, which is what occurred here, the district court is within its discretion to deny acceptance of responsibility. Well, because he wasn't convicted of the conspiracy that he was charged with. He wasn't convicted of a B1A. He was convicted of a B1C. And the proof at trial suggests that he was convicted of small quantity distribution, for teeners, eight balls, possibly up to an ounce, when the conspiracy that he was charged with was with Mr. Erdman. Didn't that rely on your ability to be successful in saying that this should have been a multi-conspiracy instead of a single conspiracy conviction? I'm sorry? Didn't that rely on your contention that there should have been an instruction for multiple conspiracies? Yeah, I think that does rely on the contention that there should have been. We believe there should have been an instruction for multiple conspiracies because we believe there was multiple conspiracies. And the evidence suggests that there was multiple conspiracies. You've got Kenneth Crook and Krista Erdman that are moving 20, 25, 30 kilos at a time from Dallas, Kansas City, into Des Moines. You've got a multitude of people that Mrs. Erdman was associating with that Mr. Bennett was not associating with. The warrants were executed on Kenneth Crook and Krista Erdman in October of 2021. I'd like to come back to Chief Judge Smith's question. It seems to me you talk about he'd have to perjure himself to accept the plea agreement. Well, no. He can accept the plea agreement, and then the government will make its showing at the change of plea hearing on a factual basis. And he denies the quantity. And now the court can say he doesn't have this acceptance taint. He's done what he could. But he didn't do that because he really didn't want to plead. Well, what you're saying is he could have gone in, attempted to enter a plea to a B1A, denied that he was responsible for a sufficient amount? You triggered my question by using the word perjure. I mean, accepting a plea agreement is not committing perjury. Perjury would have to be in court, wouldn't it? Right. For him to go in and enter a plea of guilty to this offense that the government wished for him to plead to, he would have to make a factual basis. He doesn't. The government does. He still has to admit and agree that the factual basis. Am I right? The government has to make the factual basis, and then the court would ask him, you know, do you agree with that? I believe under Rule 11, for a defendant to enter a plea, he has to either adopt and agree that the factual basis is accurate, that he committed the offense. Do you have a case where this were just a quantity disagreement? The defendant chose to go to trial because of a quantity disagreement and then said, well, you know, I still accept. I still accepted responsibility. I do not. I did not locate that case, but I can certainly think that. I wouldn't say never, but I don't know of any. Well, if your man had gone to trial and said in the trial, we agree that he was involved in a drug conspiracy, but it was only at the low quantity level of B1C, and the government is trying to increase the offense to a B1A, and that's why we're here for trial, because we don't think they can prove anything more than our low-level involvement, then you'd have a stronger argument, wouldn't you, for acceptance. But as I understand it, your man said at the trial, I'm totally innocent. He actually didn't say anything at trial. He remained silent. Well, but I mean the defense was, we're innocent, my guy is innocent, not my guy's guilty of the B1C. Well, the defense was that he was involved with Erdman and Crook, and that was the offense that was charged in the conspiracy count. He wasn't a conspirator. In that conspiracy, which was charged. But he wasn't charged with a separate conspiracy. He didn't commit any conspiracy, did he? I mean, remaining silent, it's the defense that, it's what defense counsel argued to the court and the jury. Absolutely. Well, what elements of the crime did he admit at trial? He didn't admit any elements of the crime. Right. He remained silent. The actual basis of the charge. With respect to the conspiracy that was charged. He didn't, but, well, you just said he didn't admit anything. I mean, on appeal, you say, well, he really was only contesting the subsection of the statute he was charged with. But I'll bet the jury wasn't told that by defense counsel. We did not tell the jury that he was only, that's correct. We didn't tell the jury that we were only contesting the quantity assessments because we were actually contesting his involvement with Erdman and Crook generally. He contested all the factual elements of the charge at trial. He contested that he was involved with Crook and Erdman, but he didn't deny that he was. He didn't testify. He didn't say anything. Exactly. He didn't say anything. He didn't affirmatively deny anything. Correct. We cross-examined those two like mad, right? And this is a manufactured reconstruction of the trial. Well, the problem is, as the case comes to us, the jury found that he was in the charge conspiracy. And so now you're down to arguing. Right. It's a quantity dispute and you didn't admit at the trial to the lower quantity. So. Correct. He was convicted of the lesser offense of B1C. But of the charge conspiracy. Of the charge conspiracy and the indictment. Correct. Which is what was denied at the trial. So that's where your problem is on acceptance. Right. But back to the quantity issue, I want to address acquitted conduct. I know that that's something that was significant in the sentencing court's determinations relating to the presumptively reasonable sentence. There was a significant disparity between where the court determined was presumptively reasonable and where the jury verdict determined was presumptively reasonable. I think the distinction in presumptive reasonableness leads to a conclusion that the quantity is an element of the offense, should be determined by the jury, and that's what should determine whether or not the base offense level is presumptively reasonable. I'm out of time as far as getting into my rebuttal time here, but I want to address this a little bit more because under 1B1.3, the language is that relevant conduct does not include conduct not formally charged or that's not an element of the offense of conviction is not included in relevant conduct. The elements of 841B1A, B, and C include quantity. So to consider quantity as part of relevant conduct is contrary to the language of 1B1.3. And consistently, the Supreme Court has determined that all elements of a criminal offense must be determined by a jury. So what you have is a situation where you've got an element of the offense that shouldn't be considered as relevant conduct based on a language of relevant conduct that is considered for relevant conduct and increases the presumptive reasonableness of the sentence. Our position is that because of that scenario, because of the fact that it increases the presumptive reasonableness and that sentences are attached to the presumptive reasonableness, it's a fact that should be determined by a jury and not the judge in determining what the base offense level should be. Well, it sounds like you're making a good argument on what might become the law, but in terms of what current Eighth Circuit law is, what's your best case that we should reverse as consistent with your argument? Well, I think that the cases that were cited by the government can be distinguished. First of all, there's not such a distinction in the base offense level and the two base offense levels of where the court ended up and where the jury verdict should have put it. In other words, in this case, you go from a 22 to a 38. You go 16 offense levels based on judicial determinations. The other issue is I don't think that this Court has directly addressed the 1B1.3 language issue. You don't have a case? I don't have a case, Judge. Okay. Thank you. I'll reserve the remainder of my time for rebuttal. Thank you. Mr. Kearns? May it please the Court, my name is Adam Kearns, and I represent the United States. I was co-counsel at trial on this matter, and I authored the brief before Your Honors. This was a textbook conspiracy that was presented to the jury. We showed that the defendant conspired with multiple other persons to leave the state and transport kilos of methamphetamine back to Des Moines over and over again. And we showed not only that he went out of state along with his partner to obtain it from a cartel-linked source, but we showed that he brought it back here to Des Moines and that he distributed it from there. We showed the full overarching conspiracy here, where he obtained it, who he obtained it with, and how he went about disposing of it before he started his cycle over and over again. This is not a case that relied upon the two cooperators that the government put forth at trial. This is a case where the defendant's own words and his messages on Facebook and other forums indicate his deep, deep involvement with all levels of this conspiracy. With respect to some of the questions that this Court had on acceptance of responsibility, as the Court knows, the burden is on the defendant to prove that he clearly accepted responsibility for his offense. The burden is on him. You're saying you didn't rely on the conspirators for the ultimate quantity determination of the sentencing? We did in part, certainly, Your Honor. They were part. It would be essential to the uptick in the quantity, right? Their testimony. Their testimony was certainly a substantial piece, Your Honor. What I'm saying to the Court is that their testimony did not stand alone. Their testimony was corroborated by the defendant's own words. They were corroborated by, for example, some monies that moved from Kenneth Crook via Western Union to the co-conspirator and one of the testifying cooperators, Kenneth Crook, and amongst other things, Your Honor. So, yes, absolutely, in part we did. And that's one of the reasons why these cooperators were determined by the jury to be at sentencing as he is required to. When you say the jury found them credible, there wasn't a special verdict, was there? You're inferring that from the guilt? I am inferring that from the guilt, Your Honor. And I'm certain they found them 100 percent credible. It would be hard to explain the failure to convict of the greater charge. I think that's the dilemma on this record. It is, Your Honor. The question is what do we do about it? Right. And to be completely candid, the government was very surprised at the special verdict form. Certainly, the defense, the appellant and the court didn't go to credibility. Absolutely. Right. Okay. And just as the district court recognized, it was the district court's words are it's extraordinary. It's very difficult to know how the jury approached the quantity issue. That's correct. We don't know. All we know from that jury special interrogatory and the verdict as a whole is that they found that James Bennett was guilty of conspiring with other persons known and unknown to distribute and conspired to distribute methamphetamine from March to October of 2021. That's what we know from the verdict. What we know and the only thing we know from the special interrogatory is that at least one of those 12 jurors decided that they didn't believe beyond a reasonable doubt the higher quantities. That's all we know. We can't read into it further. It would be reckless to read into it further as to did they decide that there was a different conspiracy here. That is troubled waters and I'm not going to speculate. Certainly, I have different viewpoints as to how maybe the jurors came up with that decision, but I will keep myself from speculating on that. With respect to the acceptance responsibility, the district court's determination here is reviewed for clear error. And the district court found, quote, there was a challenge to the defendant's involvement in the conspiracy at all. It was not just a situation of admitting being part of a conspiracy, but challenging his acknowledgment of drug quantities, end quote. That finding by the district court is correct and it's entitled to deference. Plain error review on this issue? Excuse me, Your Honor? I thought I heard you say it's plain error review on this issue? Clear error. Okay. If I misspoke, I apologize. It's clear error, Your Honor. And that finding by the district court, and this is a factual, factually intensive decision, it's entitled to deference. The denial of acceptance responsibility by the district court was not clearly erroneous. Frankly, it wasn't close. This Court has held, and I'm referring to the Mons case and the Arias case that I cited in my brief, that a defendant who proceeds to trial and presents a defense that denies factual guilt does not clearly demonstrate acceptance responsibility. And that is exactly the facts before this Court. The defendant denied factual guilt at trial. He didn't admit a single element for the jury. He did not tell the jury, convict me of conspiracy, but acquit me of the quantities. He strenuously argued that the government failed to prove its case beyond a reasonable doubt and that the jury should acquit him entirely. That is the facts. That is how this trial played out. It couldn't be different if he had fallen on his proverbial sword, but he did not. Acceptance responsibility was correctly denied. With regard to the issue that was touched on towards the end of Mr. Nelson's argument about the district court finding a higher quantity than what the jury found unanimously and beyond a reasonable doubt at trial, that argument is foreclosed by this Circuit's precedent. I'm referring to the Webb and Ramirez-Maldonado cases that clearly indicate that the district court may impose a sentence based upon drug quantity that is greater than that found by the jury, so long as the sentence doesn't exceed the statutory maximum. Is it pending before the Supreme Court in the case where certiorari was granted? I know it's a hot-button issue. Not to my knowledge, Your Honor. I haven't researched it. Not to my knowledge, Your Honor. But regardless, this panel is bound by the Circuit precedent, and it's clearly the argument is clearly foreclosed at this time. One side note on that issue, you know, I was thinking to myself as I was sitting at counsel table, well, what if the government had chosen to exercise its discretion for one reason or another and indicted Mr. Bennett on a B1C quantity only? Because there's no mandatory minimum, and if the government had chosen that, that certainly would have been a benefit to Mr. Bennett. And sometimes the government does choose to do that for defendants, even though the quantities are substantially higher than the mandatory minimums require. Is the government then bound at sentencing to only attributing 50 grams? Is the court bound then at sentencing because the government has exercised its discretion in what it believes is in the best interest of the public? If Judge Richard Arnold would say yes, we had that debate in bank. And so I raise the question because certainly the government would be less apt if it's not entitled to show at sentencing the full course of the conduct, less apt to then give a defendant early on the benefit of the doubt and not charge a mandatory minimum. And so a rule that would restrict in the way that the defense is advocating could actually be detrimental to defendants going forward. With regard to the reasonableness of the sentences, Your Honor, the Court is very familiar with the standard here. District Court's decision here was below the advisory guideline range. The appellant is not, in my understanding, suggesting that the level 38 is not supported by a preponderance of the evidence standard, but rather simply that the court shouldn't have been able to do that at all. And a sentence below the guidelines, this Court has said it's nearly inconceivable that a sentence below the guidelines would be so high as to be substantively unreasonable. This is not that case. The district court did not commit any error during the sentencing process. The district court didn't consider any factors that it should not have considered. The district court did not fail to consider any factors that it should have considered. And so this is an argument that boils down to the district court weighed the appropriate factors, but I don't like the way that the district court weighed them. That's the argument. And there's wide latitude for a district court to assign certain factors different weights, and that's what happened here. The factors support a 300-month sentence, a below-the-guidelines 300-month sentence. We have over 100 kilos of methamphetamine that was attributed to the defendant. It spanned a large portion of 2021. He transported, went out of State, transported carloads of methamphetamine back, and he did it over and over again. And the defendant is not, this is not his first rodeo, so to speak. He has a fairly lengthy criminal history, which placed him at a criminal history five. It would have been higher, but some of it was even more dated. With respect to, you know, any mitigating factors, I think the district court took those into account, and that was one of the reasons that the district court gave a below-the-guidelines sentence here. This is not the nearly inconceivable case where a below-the-guidelines sentence is substantively unreasonable. With respect to some of the other arguments, Your Honor, I know the defendant You're talking about the arguments in the brief or the arguments this morning? The arguments in the brief, Your Honor. And I'm happy to All right. You're opening them all up for rebuttal. Well, I'm happy to answer any questions that the Court might have about any of the issues that the Court's particularly interested in at this time. And if not, I'm happy to yield my additional time and rest on my briefs for the remaining issues. I see none. Thank you very much. It's been a pleasure. Thank you, Mr. Kern. Mr. Nelson? The entirety of these issues relies largely upon the credibility of both Crook and Erdmann. And the verdict that was returned by the jury clearly rejects their credibility as it relates to these issues. I want to address very briefly in response to the Government the quantity issue again. And I know that you had asked Judge Loken if this acquitted conduct issue is in front of the Supreme Court. It hasn't been taken up by the Supreme Court. The Supreme Court has indicated that they are going to wait for the Sentencing Guideline Commission to act on it. If they don't, it appears that they may be taking it up. They issued an actual opinion in a certain aisle in United States versus McClinton earlier this year suggesting that this is something that they need to take a look at. And the basis for why they want to take a look at it is because it is a denial of the right to a jury trial to sentence defendants far in excess of the actual verdict that is returned. So we would ask the Court to take into consideration the fact that the Supreme Court may be looking at the issue. And also, I think that the facts of this case are distinguishable from any other any arguments are distinguishable from any other case that's been before the Eighth Circuit on that issue. So thank you for your time. I appreciate it. Thank you, Mr. Nelson.